Warren Tom STEPHENS *v.* STATE of Arkansas

CR 95-1098                                   941 S.W.2d 411

Supreme Court of Arkansas
Opinion delivered April 7, 1997

*Mickey Buchanan*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

RAY THORNTON, Justice. Appellant Warren Tom Stephens was convicted of first-degree murder and sentenced to life imprisonment for the shooting death of Michael McNeal, whose body was found near DeQueen a few days after his family reported him missing. Evidence connecting appellant to the crime led to a search warrant for his home, and on May 5, 1994, during the search, appellant was arrested, taken to jail, advised of his *Miranda* rights, and questioned. Early the next morning, he gave a tape-recorded confession admitting to the killing. He led officers to the location where the gun, which was wrapped in plastic, was buried, and recounted how he had used paper sacks to mark his trail into the woods so he could return to the victim's truck and drive it back to town. Over the next few days, he gave various other accounts implicating others, but these statements were inconsistent and contradictory. On appeal, he argues that (1) the court should have suppressed the taped confession and statements; (2) the court erred in admitting irrelevant and prejudicial testimony; (3) the court erred in limiting inquiries into juror relationships with a former prosecuting attorney during voir dire; (4) the court erred by commenting on the Governor's power to pardon during deliberation upon the sentence.

We have considered each of these arguments charging error; and the transcript and abstracts have been reviewed to determine whether any rulings decided adversely to appellant involve prejudicial error. We find no error, and affirm.

Each of the assignments of error raises issues relating to factual circumstances surrounding the allegations of error; therefore, we will address each argument separately.

Appellant first argues that his taped confession and subsequent statements should have been suppressed because they were taken in violation of his constitutional rights under the Fifth Amendment. His argument is twofold. He alleges that his confession was coerced, rendering all subsequent statements "fruit of the poisonous tree." Further, he contends that one of the subsequent statements was taken after he had asked for an attorney, violating his right to counsel.

Statements made while in custody are presumed to be involuntary, and the burden is on the State to show that the statements were made "voluntarily, freely, and understandingly, without hope of reward or fear of punishment." *Scherrer v. State*, 294 Ark. 227, 234, 742 S.W.2d 877, 881 (1988). In determining whether a statement is voluntary, the reviewing court makes an independent review of the totality of the circumstances, and will not reverse unless the trial court's findings are clearly against the preponderance of the evidence. *Weger v. State*, 315 Ark. 555, 869 S.W.2d 688 (1994). However, all doubts are resolved in favor of individual rights and safeguards. *Davis v. State*, 275 Ark. 264, 630 S.W.2d 1 (1982).

We have written that there are two components to the totality-of-the-circumstances test for determining the voluntariness of custodial statements. First, we examine the statements of the interrogating officers. Second, we consider the vulnerability of the defendant, weighing such factors as age, education, intelligence, repeated or prolonged nature of questioning, delay between receiving *Miranda* warnings and giving a confession, length of detention, use of physical punishment, and the defendant's physical and emotional condition. *Scherrer*, 294 Ark. at 234-34, 742 S.W.2d at 881. Though the second factor is important in determining whether an interrogation is improper in a particular situation, the United States Supreme Court's directive is explicit in that the defendant's physical or mental conditions, in and of themselves, cannot render a confession involuntary. A finding of

police misconduct is essential. *Colorado v. Connelly*, 479 U.S. 157, 164, 167 (1986).

The facts surrounding the confession are as follows. Appellant was arrested during a search of his home on May 5, 1994. He and his wife were taken to the courthouse, leaving his two stepchildren at home. He was questioned for about four hours. He was wearing a tank top, shorts, and shoes with no socks. He said that he was very tired, under the influence of drugs and alcohol, and worried about his family. He argues that his being questioned while under physical and mental stress amounted to coercion. The trial court held a *Denno* hearing and found no evidence of coercion, threats, or any improper behavior by police officers. We do not find this determination to be against the preponderance of the evidence.

The officers who interrogated appellant testified that he was mirandized at approximately 9:07 p.m. and a statement was tape recorded at 1:27 a.m. During the time he was being interrogated, they took four breaks, which the officers said were taken whenever appellant said he needed to go to the bathroom or get a drink. They said that appellant was offered soft drinks, candy, and coffee but did not ask for anything except water. At appellant's request, the sheriff took appellant's wife home about midnight.

Appellant never indicated that he wanted a lawyer on the date of his first statement. Shortly after 1:00 a.m., upon returning from a bathroom break, appellant seemed anxious to talk, and he gave his confession at 1:27 a.m. The officers said that appellant did not give the impression of being fatigued, only anxious. Further, they said that appellant never complained of being cold or otherwise uncomfortable.

Appellant does not argue that he was physically harmed by police or that they made threats or promises to him in exchange for a confession, and no evidence of coercion is apparent from the record. Although appellant testified at the *Denno* hearing that he was not offered food and that it was obvious to him that he was going to be questioned until he confessed, this court has repeatedly held that it will defer to the trial court's finding of fact when the only determination is credibility of a witness. *Weger*,

315 Ark. at 558, 869 S.W.2d at 690. Further, we note that appellant admitted on cross-examination at trial that his statement was voluntary, as follows:

> [Prosecutor]. Okay. On direct examination you talked about back on May 5th when you were brought here to the courthouse and indicated that you had not eaten yet.
> [Appellant]. That's right.
> [Prosecutor]. Are you telling us today that in any way you feel that the police coerced you in making any of the statements that you made?
> [Appellant]. No, sir.
> [Prosecutor]. Would you have any other different statement but for the facts that you had not eaten or done something different?
> [Appellant]. No, sir. I don't know.

In sum, there is a preponderance of evidence that the confession was voluntary. The trial court did not err in admitting the confession at trial, nor did it err in admitting the three subsequent statements, as they are not fruit of the poisonous tree.

Appellant's second Fifth Amendment argument is that the trial court should not have admitted a statement that was taken after he had asked for an attorney. These are the facts surrounding this statement.

On May 9, appellant asked to speak to the sheriff, and the sheriff brought him to his office. At this time, he said he wanted an attorney. The sheriff tried unsuccessfully to locate two attorneys. He told appellant that he could not ask him any more questions until an attorney was found. When no attorney could be found, appellant said he wanted to continue the interview. The sheriff then gave him a supplemental warning, which stated that appellant was previously apprised of his *Miranda* rights and had exercised his right to have an attorney present during questioning, but that he was rescinding this request and voluntarily initiated the request that the questioning continue without an attorney.

In determining whether a statement made by an accused after he has asked for counsel, but then waived this request, is admissible, the proper focus is not upon the voluntariness of the statement itself, but upon whether waiver of the right

to counsel is intelligently and voluntarily made. *Edwards v. Arizona*, 451 U.S. 477 (1981). In *Edwards*, the Supreme Court, after noting that "an accused's request for an attorney is a *per se* invocation of his Fifth Amendment rights, requiring that all interrogation cease," stated that an accused is not "powerless to countermand his election" and can initiate further statements. *Id.* at 485.

Recently, in *Esmeyer v. State*, 325 Ark. 491, 930 S.W. 302 (1996), we held that a statement of an accused, which is made after he asks for a lawyer, will be admissible only if the accused initiates further contact, and in doing so knowingly and intelligently waives his right to counsel. *Id.* The right may be considered waived when an accused initiates contact with police after having requested counsel. *Id.*; *see also Franks v. State*, 306 Ark. 75, 811 S.W.2d 301 (1991). Here, appellant initiated the contact with police and signed a waiver-of-rights form that clearly stated that he had been advised of his rights, was rescinding his request for an attorney, and was voluntarily continuing to speak with the sheriff. Thus, the trial court's determination that his waiver was knowing, intelligent, and voluntary was not against the preponderance of the evidence.

Appellant's second point on appeal is that the trial court erred in overruling his relevancy objections to the sheriff's testimony about statements he made during his confession that concerned "matters not connected to the case." These matters included his explanation why he purchased a shotgun, field glasses, and handcuffs; his explanation as to where he was when threatening phone calls were made to the victim's family; and evidence of an extramarital affair and his marijuana use. These arguments have no merit.

During the State's case-in-chief, the sheriff testified that appellant went to a pawn shop on the day of the murder and purchased a shotgun, field glasses, and handcuffs. The sheriff questioned him about this, and appellant said that he got the field glasses for peeking in windows and the handcuffs to use on his wife during sex. He argues on appeal that this testimony was

irrelevant and that its admission was prejudicial. We do not address this argument because it is not preserved for our review.

Earlier in the trial, appellant objected to the pawn shop owner's testimony about the gun, but he did not object to the sheriff's testimony about the gun and the other purchases. When a question previously objected to is repeated, and there is no second objection, the matter is waived on appeal. *Walker v. State*, 301 Ark. 218, 783 S.W.2d 44 (1990). Also, appellant testified on cross-examination about the shotgun himself without objection. Therefore, as the sheriff's testimony was cumulative of appellant's own, he cannot show prejudice. *Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996).

His next argument under this point is preserved for our review, and it came about as follows. On the day a threatening phone call was made to the victim's family from a phone in Oklahoma, appellant had stated that he was in Oklahoma at a doctor's office. He had called in sick to work and reported this to his employer. When asked by the sheriff if he was in Oklahoma that day, he said that he had lied to his employer and was actually at home by himself watching pornographic movies. Appellant complains that this evidence is irrelevant and prejudicial. We disagree. Appellant made this statement when he was being questioned about the threatening phone calls. A trial court's ruling on relevance will not be reversed absent abuse of discretion, and we find no abuse here. *Dixon v. State*, 311 Ark. 613, 846 S.W.2d 170 (1993). The evidence was relevant, as a defendant's false and improbable explanations of incriminating circumstances are admissible as proof of his guilt. *Surridge v. State*, 279 Ark. 183, 650 S.W.2d 561 (1983).

Appellant contends that the trial court erred in admitting evidence of an extramarital affair that he had while he was married to his first wife. The State's theory of the case was that appellant murdered McNeal in order to be with McNeal's wife, Candy, with whom he was obsessed. Evidence of prior, similar bad acts may not be introduced to show that a defendant acted in conformity with those acts at the time of the offense. Ark. R. Evid. 404(b). However, appellant testified himself that he wanted

to have a sexual relationship with Candy and that he had no problem with extramarital affairs if the timing were right. Therefore, appellant's bad character regarding marital infidelity was before the jury without objection, and he cannot claim prejudice. We have often said that to obtain reversal, an appellant must show not only error, but also prejudice. *Wallace v. State*, 326 Ark. 376, 931 S.W.2d 113 (1996).

■ Appellant also complains that admission of evidence regarding marijuana use was irrelevant and prejudicial. The sheriff testified that appellant told him that he used marijuana two or three times a week. However, appellant requested and received a cautionary instruction by the trial court. Therefore, he cannot complain on appeal because he received all of the relief he asked for at trial. *Davasher v. State*, 308 Ark. 154, 823 S.W.2d 863 (1992).

Appellant's third assignment of error is that the trial court erred when it commented before the jury on the Governor's power to pardon. After the jurors returned a verdict of guilty to first-degree murder, they were instructed and heard testimony as to aggravating and mitigating circumstances from which they were to determine punishment, and retired to deliberate on punishment. In the original record filed on appeal there was an issue of what happened when the jury returned to the courtroom to ask their questions. Upon the motion of both parties, we remanded to the trial court to settle the record. A supplemental record settling the issue was filed.

The original record shows that the foreman asked the court what the difference was between the community punishment facility and parole. The court, after explaining the difference, then said:

> What was the second question? Life — does life mean life? Life — the only way anybody can be eligible for parole would be if the governor granted clemency and commuted a sentence to a number of years, and that's not impossible. There's probably just one or two cases in the last 20 years, to my recollection, so you couldn't count on anybody every being eligible to get out if they got a life sentence, but it wouldn't be impossible, but it would be next to the way things stand for the last 20 years.

Appellant did not object to the answer to the juror's question at the time the court gave it. After appellant was sentenced, the judge told the jury that he needed to do a bit of housekeeping because he did not notice that the court reporter was not in the room, and that she did not record both questions. The court asked if anyone disagreed that the question was whether community punishment was the same as parole. Appellant answered, "I know and you got the second."

At the hearing to settle the record, appellant complained to the trial court that there was "a lot of information there and conversations between the court and counsel and jury that were just not on this record," making it impossible to reconstruct. He did not argue, as he does on appeal, that the court's remarks to the jury about the Governor's power to pardon constitutes reversible error.

It is well settled that an appellant may not change the basis of his argument on appeal. *Stewart v. State*, 320 Ark. 75, 894 S.W.2d 930 (1995). However, we note that it is not error for a trial court to inform the jury of the Governor's power to pardon. Arkansas Code Annotated § 16-97-103, which went into effect on January 1, 1994, provides in pertinent part:

> Evidence relevant to sentencing by either the court or a jury may include, but is not limited to, the following . . .
> (1) The law applicable to parole, meritorious good time, or transfer. . . .

*Id.* § 16-97-103(1) (Supp. 1995); *see also Owens v. State*, 318 Ark. 61, 883 S.W.2d 471 (1994). The law applicable to parole is set out in part in Ark. Code Ann. § 16-93-607, providing that inmates sentenced to life imprisonment may not be released unless their sentence is commuted to a term of years by the Governor. Therefore, it is not error to so instruct the jury.

Appellant's final point is that the trial court erred in prohibiting the defendant from questioning potential jurors about any connections or relationships they may have had with Jim Bob Steel, former prosecuting attorney, who filed the charges against him, but was not trying the case. However, the record is devoid of any such attempted questioning. During voir dire, appellant's

attorney made repeated references to Mr. Steel, but did not ask any of the panel if they had any connections or relationships with him. He told the trial court he wanted to show "how the charge came about." The court said it saw no reason for reference to Mr. Steel unless appellant desired to show that the charge was politically motivated, and told him to refrain from further reference to Mr. Steel.

█ █ Again, we reiterate that an appellant may not change the basis of his argument on appeal. *Stewart v. State, supra.* Furthermore, the decision to restrict voir dire examination will not be reversed on appeal absent abuse of discretion. *Henry v. State*, 309 Ark. 1, 828 S.W.2d 346 (1992). There is no abuse of discretion when the trial court restricts questions that do not touch upon qualifications of venirepersons to serve as jurors, or that are potentially confusing to them. *Id.* Further, an appellant cannot complain about losing a peremptory challenge without showing that a biased juror was actually seated. *Pickens v. State*, 301 Ark. 244, 783 S.W.2d 341 (1990). Without such a showing, he can get no relief from this court. Appellant's argument is without merit.

In accordance with Rule 4-3(h) of the Rules of the Supreme Court, the record has been reviewed for rulings decided adversely to appellant but not argued on appeal, and no reversible errors were found.

Affirmed.