Mark McKEEVER *v.* STATE of Arkansas

CR 06-464                                                    240 S.W.3d 583

Supreme Court of Arkansas
Opinion delivered October 5, 2006

*William R. Simpson, Jr.*, Public Defender, *Brandy Turner*, Deputy Public Defender, by: *Erin Vinett*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Lindsey K. Bell*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice. A Pulaski County jury convicted appellant Mark McKeever of three counts of committing a terroristic act. He was sentenced to ten years' imprisonment for the first terroristic act, ten years' imprisonment for the second, and five years' imprisonment for the third. Additionally, McKeever was sentenced to multiple firearm enhancements pursuant to Ark. Code Ann. § 16-90-120 (1987). For reversal, McKeever argues that the circuit court erred in excluding relevant testimony from his mother regarding threats to his life. He also argues that the circuit court erred in sentencing him to multiple firearm enhancements. We find no reversible error and, accordingly, we affirm.

The testimony at trial revealed the following facts. On the night of March 12, 2005, Larry Anderson, Ettana Weatherspoon, and Adrian Thompson were out driving. As they drove by the intersection of 19th and Oak in Little Rock, they spotted an acquaintance of Anderson's named Xavier. They stopped in the middle of the street to speak to Xavier, at which point, according to Anderson's testimony, McKeever approached the car and shot at them. Anderson was not struck, but his companions were. They managed to drive down the road a short distance, at which point Anderson ran to his grandmother's house for help. Anderson testified that nobody in the vehicle had a gun, and that nobody shot except for McKeever.

McKeever was the sole witness for the defense. He told the jury that in the weeks leading up to the shooting, he had been involved in an argument with Thompson, and that he feared for his life and for the safety of his family. McKeever testified that on the evening of the shooting, he was standing in the street in front of his mother's house when he saw Thompson, Anderson, and Weatherspoon drive up. According to McKeever, Thompson had a gun in his lap. McKeever stated that he saw Thompson fumbling with the gun. McKeever testified that he was "in shock" and fired three shots into the car.

McKeever first stood trial in this matter on September 13-14, 2005. That trial resulted in a mistrial due to a hung jury. During his first trial, McKeever's mother, Tina Curry, testified

about several separate threats to her son's life that she had received on her cell phone. First, she testified that Larry Anderson and Adrian Thompson, two of the eventual shooting victims, called her and told her that her son was not safe in the neighborhood, and that they were going to kill him. Second, she testified that a computer-generated voice said, "I'm going to get your son."

At the retrial, the State moved in limine to exclude Curry's testimony regarding the computer-generated voice. The objection was as follows:

> DEPUTY PROSECUTING ATTORNEY: As to Ms. Curry, she testified that she received threats on her phone. One of those threats was a computer-generated voice. We would object to her testifying to that. I didn't object last time. We were in the midst of trial and just simply for strategic reasons didn't want to look like we were trying to hide anything, but that's blatant hearsay to talk about a threat, there was a message left on her phone that was a computer-generated voice. She has no idea who left that message, and I am going to ask that she specifically not be allowed to testify to the threat. Only if she recognized the voice as a person she knew should she be able to testify to a threat.

> DEFENSE COUNSEL: I think she should be able to testify to a threat she received on her own voice — on her own voice mail. She can't say who. I think it's important for her to be able to tell the jury she played this threat that she received to the police officers.

> DEPUTY PROSECUTING ATTORNEY: But it's irrelevant if she can't say who it's from. It could have been Bill Gates, T.P., anybody, anybody that might have a beef with her son or a beef with her. That's irrelevant. It's prejudicial. She can't say who that threat came from; therefore, it has absolutely no relevance to this. It's their theory that self-defense — and, furthermore, if Mr. McKeever was unaware of those threats, it would be less relevant or not relevant at all, I should say. So I am objecting specifically to the computer-generated voice threat that she claims was on her phone and any threats if she cannot specifically identify the voice.

> THE COURT: Okay. I will grant the motion.

DEFENSE COUNSEL: Note my objection, Your Honor.

THE COURT: I'll note your objection. Anything further?

. . . .

The defense did not call Curry to testify during its case-in-chief, but renewed its objection to the trial court's ruling, as follows:

> DEFENSE COUNSEL: Sorry, Your Honor, I forgot to — I must renew my motion based on the fact that Tina Curry would testify to if the Court allowed. The Court had said she could not testify as to the threats. I would renew my motion based on the same grounds that she be allowed to testify to that since the messages were on her voice mail.

. . . .

McKeever argues that the circuit court erred in excluding Curry's testimony because the testimony about threats to his life was relevant to his claim of self-defense. In evidentiary determinations, a trial court has wide discretion, and we do not reverse a ruling on the admission of evidence absent an abuse of that discretion. *Bullock v. State*, 353 Ark. 577, 111 S.W.3d 380 (2003). Additionally, this court will not reverse an evidentiary ruling absent a showing of prejudice. *Sauerwin v. State*, 363 Ark. 324, 214 S.W.3d 266 (2005). All relevant evidence is admissible, except as otherwise provided by statute or court rule. Ark. R. Evid. 402. Evidence which is not relevant is not admissible. *Id.* Pursuant to Rule 401 of the Arkansas Rules of Evidence:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Self-defense in Arkansas is defined in pertinent part as follows:

> (a)(1) A person is justified in using physical force upon another person to defend himself or herself or a third person from what the person reasonably believes to be the use or imminent use of unlawful physical force by that other person, and the person may use a degree of force that he or she reasonably believes to be necessary.

Ark. Code Ann. § 5-2-606 (Repl. 1997). McKeever argues that, under this standard the reasonable belief of the defendant is paramount and, thus, threats communicated from the victim to the defendant are relevant to show the reasonableness of the defendant's belief that harm to himself is imminent.

McKeever states that the relevance of such threats is clear, and the fact that, in this case, one of the threats was computer-generated should go only to the weight, not the admissibility, of the threat. McKeever also states that his credibility was a central issue in this case. He avers that at the first trial — the one in which the jury hung — his testimony that he was frightened for his life was considerably buttressed by his mother's testimony about the threats she received. He argues that even if computer-generated, the threat greatly illuminates his state of mind prior to the shooting and drastically changes the tenor of his claim of reasonable belief that he was in danger.

■ We agree with McKeever that the circuit court's exclusion of the evidence was in error; however, we will not reverse because McKeever has failed to demonstrate that he was prejudiced by the circuit court's ruling. It is important to note that *only the testimony concerning the computer-generated threat* was excluded. The State did not move in limine to exclude Curry's testimony about the threats she received from Larry Anderson and Adrian Thompson. Thus, it follows that the circuit court's ruling did not exclude that testimony, and McKeever could have elicited that testimony from Curry. McKeever's objective — to buttress his own testimony with his mother's testimony about the threats she received — could have been accomplished by calling his mother to testify about the threats she received from Larry Anderson and Adrian Thompson. McKeever failed to present a proffer or otherwise show how he was prejudiced by the exclusion of testimony regarding the computer-generated voice when he could have put Curry on the stand to testify to the voice threats she could identify.

McKeever's second point on appeal is that the circuit court erred in sentencing him to multiple firearm enhancements under Ark. Code Ann. § 16-90-120. In this case, McKeever was accused of having fired three shots into a vehicle and wounding two of the vehicle's three occupants. For this conduct, he was charged with three separate counts of committing a terroristic act under Ark. Code Ann. § 5-13-310(a)(1) (Repl. 1997). The State then sought

and received jury instructions allowing the jury to fix three separate firearm enhancements pursuant to Ark. Code Ann. § 16-90-120.

"[A] person commits a terroristic act when, while not in the commission of a lawful act, [h]e shoots at or in any manner projects an object with the purpose to cause injury to persons or property at a conveyance which is being operated or which is occupied by passengers[.]" Ark. Code Ann. 5-13-310(a)(1) (Repl. 1997). In this case, McKeever shot three successive bullets into a car using one firearm, and during one incident. McKeever acknowledges that committing a terroristic act is not a continuous–course–of–conduct crime, and that the three shots may be properly charged as three separate crimes. *See McLennan v. State*, 337 Ark. 83, 987 S.W.2d 668 (1999) (holding that appellant's firing three shots into an apartment constituted three separate terroristic acts for the purpose of Ark. Code Ann. § 5-13-310).

McKeever argues that this court must determine whether a sentencing court under Ark. Code Ann. § 16-90-120 can sentence an offender to serve multiple firearm enhancements for one incident. He contends that it does not necessarily follow that once conduct is charged as three separate crimes, then the State can automatically get three enhancements stacked one on top of the other.

The issue before the court is one of statutory interpretation. The basic rule of statutory interpretation is to give effect to the intent of the legislature. *Bramlett v. State*, 356 Ark. 200, 148 S.W.3d 278 (2004). We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning. *Id.* In addition, when the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory interpretation. *Id.*

The firearm–enhancement statute, Ark. Code Ann. § 16-90-120, provides in relevant part:

> (a) Any person convicted of *any* offense which is classified by the laws of this state as a felony who employed any firearm of any character as a means of committing or escaping from the felony, in the discretion of the sentencing court, may be subjected to an additional period of confinement in the state penitentiary for a period not to exceed fifteen (15) years.
>
> (b) The period of confinement, if any, imposed pursuant to this section *shall be in addition to any fine or penalty provided by law as*

*punishment for the felony itself.* Any additional prison sentence imposed under the provisions of this section, if any, shall run consecutively and not concurrently with any period of confinement imposed for conviction of the felony itself.

(Emphasis added.)

The plain language of the firearm-enhancement statute shows that the legislature intended for it to apply to "any offense . . . in addition to any fine or penalty provided by law as punishment for the felony itself." Ark. Code Ann. § 16-90-120. In the instant case, McKeever committed three separate criminal offenses, and each of those three offenses was committed with a firearm. As such, each of the offenses was subject to a sentence enhancement under Ark. Code Ann. § 16-90-120.

Still, McKeever argues that in pulling a gun and firing at the car, he committed only one act that the legislature sought to punish under the firearm-enhancement statute — that is to say, he used one firearm in one violent incident. Thus, he appears to contend that since he used only one firearm in one incident during the commission of three separate offenses, he is subject only to one enhancement. We disagree. This court rejected a similar argument in *Welch v. State*, 269 Ark. 208, 599 S.W.2d 717 (1980). In that case, appellant argued that the punishment for each of the three offenses could not be enhanced under the firearm-enhancement statute because all three offenses were parts of a single criminal episode. We stated:

> Even so, the robbery and the two rapes were separate offenses, each of which could have been committed with or without a firearm. No double jeopardy is involved, because there is no constitutional barrier to the enhancement of the separate punishment for each of three distinct crimes, all of which were committed with a firearm.

*Welch*, 269 Ark. at 212, 599 S.W.2d at 720. Likewise, in the instant case, each terroristic act was a separate offense, each of which could have been committed with or without a firearm. Each of the three distinct crimes was committed with a firearm; thus, each crime was subject to enhancement. The circuit court did not err in sentencing McKeever to multiple firearm enhancements under Ark. Code Ann. § 16-90-120.

Affirmed.

GLAZE and DICKEY, JJ., concur.

TOM GLAZE, Justice, concurring. While I agree to affirm, I disagree with the majority's conclusion that the circuit court erred. The State moved in limine to exclude the testimony concerning a computer-generated-voice threat, arguing *hearsay, relevancy, and prejudice.* Specifically, the State submitted that because McKeever's mother had no idea who the person was on the other end of the phone, she should not be allowed to testify concerning the content of that person's remarks because the content of those remarks was hearsay, irrelevant, and unfairly prejudicial. The circuit court granted the State's motion. However, on appeal, McKeever only argues that the circuit court erred on the relevancy issue. He simply ignores the hearsay and prejudicial grounds ruled on by the circuit court.

In order to prove error, McKeever was required to argue that the computer-generated-voice threat was not only relevant, but also that it was not inadmissible hearsay or the threat was not unfairly prejudicial.[1] For instance, evidence, even though relevant, can be excluded under the other rules of evidence. *See* Ark. R. Evid. 402. In other words, even though the circuit court *may* have erred in ruling that the evidence was irrelevant (as concluded by the majority), the circuit court's ruling could have been upheld as evidence that was inadmissible hearsay or unfairly prejudicial. *See* Ark. R. Evid. 801 *et seq.* and Ark. R. Evid. 403.

Because McKeever failed to address these two additional arguments raised by the State, and ruled on by the circuit court, this court should not conclude the circuit court erred merely by ruling that the computer-generated-voice threat was relevant.

DICKEY, J., joins.

---

[1] The State, in its reply brief, argued that the testimony was inadmissible hearsay and irrelevant. The State's analysis of this point demonstrates that it, too, understood that McKeever was required to address the additional grounds argued by the State and ruled on by the circuit court in order for us to conclude circuit court error.