Richard Lynn BELL  *v.*  STATE of Arkansas

CR 07-261                                    266 S.W.3d 696

Supreme Court of Arkansas
Opinion delivered November 1, 2007

*Teresa M. Smith,* for appellant.

*Dustin McDaniel,* Att'y Gen., by: *Farhan Khan,* Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Richard Lynn Bell was convicted in Lonoke County Circuit Court of one count of rape and two counts of endangering the welfare of a minor in the second degree. The circuit court sentenced him to life imprisonment for the rape conviction and no time on the endangering-the-welfare-of-a-minor convictions. He now appeals, alleging six points of error. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2) (2007), as Bell received a sentence of life imprisonment. We find no error and affirm.

On the morning of May 5, 2005, Bell was in the parking lot of the Lonoke County Office of the Arkansas Department of Health and Human Services (DHHS). He was waiting in his car while his girlfriend and her mother went into the DHHS office. In the car with him were the victim, B.C., age six, and the victim's brother, S.C., approximately age three. Both children are the

siblings of Bell's girlfriend. Also in the car was J.B., Bell's seven-month-old son by his girlfriend.

That same morning, Matthew Heil happened to be sitting in a car in the DHHS parking lot. He was waiting with his two young nephews while his sister-in-law, Shannette Heil, went to a meeting inside the DHHS office. Heil testified at trial that the van in which he was waiting was facing Bell's car, but two parking spaces over. He also testified that his van sits high above the ground and that he could see into Bell's car. Heil observed Bell sitting in the passenger's seat, shaking around violently, while a young girl leaned between the seats and bobbed her head up and down out of Bell's lap. Heil watched this go on for approximately five or ten minutes. He admitted that he saw no exposed genitalia and could not determine if Bell's pants were up or down. At one point, Bell realized he was being watched and put his leg over the console, started the car, and backed it up approximately two feet (though this did not obstruct Heil's view). Because Heil believed Bell was "having the little girl do something inappropriate," he waited for his sister-in-law to return, at which point he asked her to view the situation from inside the van. When she verified that Bell appeared to be receiving oral sex, Heil went to the Lonoke Police Department, which shares a parking lot with the DHHS office.

After Heil reported the incident, several police officers came outside to investigate. The officers testified that B.C. was in the front seat with Bell when they approached the car, but that she jumped into the back seat as soon as she saw them. Upon searching the car, they found all three children in the back seat. Bell's pants were up when the officers made contact with him. He was taken to the police department for questioning, where he gave an audio-taped statement. Bell confessed that he told B.C. to touch his penis and that she performed oral sex on him. This confession was corroborated by the testimony of Lisa Channel of the Arkansas State Crime Laboratory, who testified that a hair found on Bell's boxer shorts was microscopically similar to the head hair sample received from the victim.

Bell was charged with rape and three counts of endangering the welfare of a minor in the second degree. Because there was no evidence that the infant J.B. was awake at the time of the offense, the circuit court granted his directed-verdict motion as to one count of endangering the welfare of a minor. His other motions for directed verdict were denied.

## I. Sufficiency of the Evidence

Bell asserts that, without his confession and a hearsay statement made by S.C., both of which he claims were improperly admitted, the evidence was insufficient to support the verdict. Although this point on appeal was listed fifth among Bell's points, double jeopardy considerations require this court to consider a challenge to the sufficiency of the State's evidence prior to the other issues raised in the case. *Holsombach v. State*, 368 Ark. 415, 246 S.W.3d 871 (2007).

We first note the State's assertion that this issue was not properly preserved for appeal due to the untimeliness of Bell's renewed motion for directed verdict. The State correctly notes that a directed-verdict motion is to be made at the close of the evidence offered by the prosecution and renewed at the close of all the evidence. *See* Ark. R. Crim. P. 33.1(a) (2007). Failure to challenge the sufficiency of the evidence at those times will waive the issue for appellate review: "A renewal at the close of all of the evidence of a previous motion for directed verdict or for dismissal preserves the issue of insufficient evidence for appeal." Ark. R. Crim. P. 33.1(c). The State is also correct in pointing out that a renewal made after the jury has been instructed is untimely. *See Ellis v. State*, 366 Ark. 46, 233 S.W.3d 606 (2006). Our court has dismissed sufficiency challenges as not preserved for appeal when defense counsel waited until after the jury instructions to renew the motions for directed verdict. *See, e.g., id.; Robinson v. State*, 348 Ark. 280, 72 S.W.3d 827 (2002); *Willis v. State*, 334 Ark. 412, 977 S.W.2d 890 (1998).

In the instant case, the defense offered no testimony or evidence. Thus, the close of the State's case and the close of all the evidence occurred simultaneously. Under these circumstances, we conclude that a renewal of the directed-verdict motion made at the close of the State's case was unnecessary. We have stated that "[a] defendant who goes forward with the production of additional evidence after a directed verdict motion is overruled waives any further reliance upon the former motion." *Thomas v. State*, 315 Ark. 504, 506, 868 S.W.2d 483, 485 (1994). Here, the defense did not waive reliance on the earlier directed-verdict motion by the production of additional evidence. A renewal of the directed-verdict motion was therefore not required. Consequently, we deem the sufficiency challenge to be properly preserved for our review.

Our standard of review for a sufficiency challenge is well settled. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

Furthermore, circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.* The credibility of witnesses is an issue for the jury and not the court. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

Bell asserts that his statement to police and a hearsay statement by S.C. should not have been admitted. He claims that, without these two statements, the evidence was insufficient. His argument on this point is without merit. When dealing with sufficiency-of-the-evidence challenges, our court considers evidence both properly and improperly admitted. *Sanford v. State*, 331 Ark. 334, 962 S.W.2d 335 (1998).

### a. The Offense of Rape

A person commits rape if he engages in deviate sexual activity with another person who is less than fourteen years of age. Ark. Code Ann. § 5-14-103(a)(3)(A) (Repl. 2006 & Supp. 2007). "Deviate sexual activity" is defined as any act of sexual gratification involving the penetration, however slight, of the anus or mouth of a person by the penis of another person. Ark. Code Ann. § 5-14-101(1)(A) (Repl. 2006 & Supp. 2007). "Sexual gratification" is not defined by statute, but this court has held that the State is not required to provide direct proof that an act is done for sexual gratification if it can be assumed that the desire for sexual gratification is a plausible reason for the act. *Warren v. State*, 314 Ark. 192, 862 S.W.2d 222 (1993).

We conclude there is ample evidence to support Bell's rape conviction. First, Bell admitted that B.C., a six-year-old, put her mouth on his penis and gave him oral sex. He admitted that his

pants were down during that time and that he had an erection. Heil's sister-in-law testified that she heard S.C., who was in the car at the time of the offense, yell, "Mama, Mama, Richard made her suck his dick." Furthermore, both Heil and his sister-in-law observed what they believed could only be oral sex between Bell and the victim. Though this evidence was circumstantial, the jury was free to find it persuasive. Finally, a hair found on Bell's underwear was found to be microscopically similar to the sample provided by B.C. Thus, there was substantial evidence, both direct and circumstantial, to support the rape conviction.

### b. The Offense of Endangering the Welfare of a Minor in the Second Degree

A person commits the offense of endangering the welfare of a minor in the second degree if he knowingly engages in conduct creating a substantial risk of serious harm to the physical or mental welfare of another person known by the person to be a minor. Ark. Code Ann. § 5-27-206(a)(1) (Repl. 2006). "Serious harm" includes mental injury resulting in protracted impairment of mental health. Ark. Code Ann. § 5-27-206(a)(2)(B). A person acts knowingly with respect to his conduct or the attendant circumstances when he is aware that his conduct is of that nature or that the attendant circumstances exist. Ark. Code Ann. § 5-2-202(2)(A) (Repl. 2006 & Supp. 2007). A person acts knowingly with respect to a result of his conduct when he is aware that it is practically certain that his conduct will cause the result. Ark. Code Ann. § 5-2-202(2)(B).

We hold that the endangerment convictions as to both B.C. and S.C. are supported by the evidence. The testimony of police officers that B.C. and S.C. were found in the back seat of the car, coupled with Bell's admission that he forced B.C. to perform oral sex on him while S.C. sat in the back seat, is sufficient evidence to support a finding that the offense was committed while S.C. was in the car. The act of forcing a child to either perform oral sex or watch while a sibling does so would clearly create a substantial risk of serious harm to the child's mental health. In his statement to police officers, Bell indicated that he was aware of what he was doing and that S.C. was in the back seat. Moreover, the jury could have reasonably inferred that Bell was aware his conduct was practically certain to cause a substantial risk of serious harm to both children. As we have long held, a criminal defen-

dant's state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *E.g., Smith v. State*, 346 Ark. 48, 55 S.W.3d 251 (2001). Thus, we conclude that substantial evidence supports each element of the offense of endangering the welfare of a minor.

## II. Voluntariness of Bell's Confession

Bell challenges the admissibility of his statement to police. His confession was tape-recorded; however, testimony elicited from Bell and both police officers present during the interview indicated there were eleven minutes of "preliminary" questioning that were neither recorded nor transcribed. According to Bell, it was during those eleven minutes that the officers promised to obtain psychological help for him and assured him that if he confessed to the crime he would not go to jail. Bell argues that, because of these false promises, his confession did not meet the test for voluntariness. He challenges the circuit court's denial of his motion to suppress on this basis.[1]

A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily. *Flowers v. State*, 362 Ark. 193, 208 S.W.3d 113 (2005). In determining whether a statement is voluntary, the reviewing court makes an independent review of the totality of the circumstances and will not reverse unless the trial court's findings are clearly against the preponderance of the evidence. *Stephens v. State*, 328 Ark. 81, 941 S.W.2d 411 (1997).

We have distinguished the two components of the totality-of-the-circumstances test for determining the voluntariness of custodial statements. *See Stephens v. State, supra.* "First, we examine the statements of the interrogating officers. Second, we consider the vulnerability of the defendant[.]" 328 Ark. at 85, 941 S.W.2d at 413. The analysis of the vulnerability of the defendant includes such factors as age, education, intelligence, repeated or prolonged nature of questioning, delay between receiving *Miranda* warnings and giving a confession, length of detention, use of physical punishment, and the defendant's physical and emotional condi-

---

[1] We have recognized that the question of voluntariness and the question of knowing and intelligent waiver of *Miranda* rights are distinct and separate inquiries. *Wilson v. State*, 364 Ark. 550, 222 S.W.3d 171 (2006). Bell contests only the voluntariness of his confession.

tion. *Id.* Nonetheless, an involuntary confession requires police misconduct; the defendant's physical or mental conditions alone cannot render a confession involuntary. *Id.*

In the instant case, the only evidence of police misconduct is Bell's self-serving testimony. Sergeant Randy Wayne Mauk testified at the pretrial hearing and at trial that he obtained the statement from Bell and that he did nothing to induce the confession. Regarding the eleven minutes of unrecorded questioning, the sergeant testified that the same questions asked during the recorded interview were asked during the preliminary unrecorded interview. He stated that the purpose of the preliminary interview was merely to gather facts and inform Bell of the nature of the complaint against him. According to Officer David Huggs, who was also present during the interview, Bell at one point suggested that he had a problem that caused him to commit the offense, whereupon the officers advised Bell there were programs that could help him. Officer Huggs testified that neither he nor Sergeant Mauk told Bell they would keep him from going to jail.

The circuit court admitted the confession despite Bell's self-serving testimony. The evaluation of the credibility of witnesses who testify at a suppression hearing about the circumstances surrounding an appellant's custodial confession is for the trial judge to determine, and this court defers to the position of the trial judge in matters of credibility. *Flowers v. State, supra.* Conflicts in the testimony are for the trial judge to resolve, and the judge is not required to believe the testimony of any witness, especially that of the accused, since he is the person most interested in the outcome of the proceedings. *Id.* Based upon our deference to the trial judge in matters of credibility, we hold that Bell has failed to establish the allegations of false promises. Absent evidence of police misconduct, his confession cannot be deemed involuntary. *See Stephens v. State, supra.* Therefore, the circuit court did not err in admitting his statement.

### III. Prior Sexual Misconduct Involving Victim

For his next point on appeal, Bell asserts that a specific portion of his statement to police should have been excluded as inadmissible evidence under Ark. R. Evid. 404(b) (2007). When asked if he had ever previously engaged in sexual conduct with B.C., Bell admitted that she had touched him through his pants when they were alone. He stated that this incident occurred

approximately two weeks prior to the charged offense. This court has long held that circuit courts have broad discretion over evidentiary rulings. *White v. State*, 367 Ark. 595, 242 S.W.3d 240 (2006). A circuit court's ruling on the admissibility of evidence will not be reversed absent an abuse of that discretion. *Id.*

Evidence of other crimes, wrongs, or acts is generally not admissible to prove the character of a person in order to show that he acted in conformity with that character trait. Ark. R. Evid. 404(b). Our court has articulated a pedophile exception to this rule. *See Clark v. State*, 323 Ark. 211, 913 S.W.2d 297 (1996). Certain evidence that would otherwise be inadmissible under Rule 404(b) is nonetheless admissible in child abuse and incest cases. *Id.* Evidence is admissible pursuant to the pedophile exception to show "similar acts with the same child or other children in the same household when it is helpful in showing a 'proclivity toward a specific act with a person or class of persons with whom the accused has an intimate relationship.' " *Id.* at 215, 913 S.W.2d at 299. We have noted that the pedophile exception extends to evidence of other sexual acts by the accused with the victim or another child in the same household. *Id.* Such evidence is admitted to assist in proving the depraved sexual instinct of the accused. *Id.*

In the instant case, Bell's admission that he had a sexual encounter with B.C. only two weeks before the charged offense was relevant to show his depraved sexual instincts and his proclivity toward sexual acts with the victim. His contention that the evidence was improperly admitted because the previous touching was uncharged and unsubstantiated is without merit. This court's application of the pedophile exception does not require that the prior act be charged or substantiated. *See id.* Likewise, we reject his argument that the previous touching was not sufficiently similar to the charged offense to warrant application of the pedophile exception. The pedophile exception requires that there be a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant. *White v. State, supra.* In *White*, we found a sufficient degree of similarity between the defendant's arousal at watching his young daughters perform a dance routine and his sexual conduct of having intercourse with them. *See id.* In the case at bar, the prior conduct and the conduct leading to the charged offense are even more similar. On both occasions, Bell had the victim touch his penis. The fact that during the later incident Bell had his pants down and B.C. performed oral sex on him is a

distinction without a difference. Thus, the requirement of a sufficient degree of similarity was met, and the circuit court did not abuse its discretion in admitting the evidence pursuant to the pedophile exception.

### IV. Hearsay Statement

For his fourth point on appeal, Bell contests the admissibility of the testimony by Heil's sister-in-law that she observed "[a] young, young boy" run into the DHHS office, yelling, "Mama, Mama, Richard made her suck his dick." Although the record is unclear on the circumstances surrounding this statement, the child was presumably S.C., and the statement was made after police officers arrived on the scene. Bell asserts this hearsay statement was not admissible under an exception to the hearsay rule. He also argues that no proper foundation was laid for this testimony. His foundation argument, however, was not raised below and, therefore, is not preserved for appeal. *See Callaway v. State*, 368 Ark. 412, 246 S.W.3d 889 (2007).

The statement at issue was clearly a hearsay statement, as it was not made by the declarant, S.C., while testifying at trial, and it was offered to show that Bell had received oral sex from B.C. *See* Ark. R. Evid. 801(c) (2007). The statement was nonetheless admissible under the excited-utterance exception to the hearsay rule.[2] *See* Ark. R. Evid. 803(2) (2007). "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is not excluded by the hearsay rule. *Id*. We have discussed several factors to be considered when determining if a statement is an excited utterance. *See Wright v. State*, 368 Ark. 629, 249 S.W.3d 133 (2007). The lapse of time, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement are all factors to be considered. *Id*. Furthermore, we have stated that, for the excited-utterance exception to apply, there must be an event that excites the declarant, and it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited, or

---

[2] The State contends, and the circuit court agreed, that the statement falls under the present-sense impression exception; but, we find the excited-utterance exception more applicable. This court can always affirm where the circuit court reaches the right result, albeit for the wrong reason. *See Davis v. State*, 367 Ark. 330, 240 S.W.3d 115 (2006).

impulsive rather than the product of reflection and deliberation. *Id.* The statement must be uttered during the period of excitement and must express the declarant's reaction to the event. *Id.*

In the case before us, it is patently clear that S.C. made the statement while he was under the stress of excitement caused by watching his sister perform oral sex on Bell. Bell's sexual conduct continued even after Heil went to the police department to report it, and S.C. made the statement at issue shortly after police officers arrived on the scene. Thus, the evidence suggests a short interval of time between the offense and S.C.'s statement. Moreover, there can be no doubt that S.C. would have been excited after watching the offense take place. In addition, it is unlikely that, at such a young age, S.C. reflected on the content of his statement before it was made.

We note that this court and other courts have expressed a preference for leniency as to the contemporaneous requirement when the declarant is a young child. *See Smith v. State,* 303 Ark. 524, 798 S.W.2d 94 (1990). In *Smith,* we upheld the admissibility of a statement of a three-year-old who witnessed a murder and told his mother about it the following day. *Id.* Thus, we cannot say that the contemporaneous requirement was not met here, where the child made the statement minutes after witnessing the offense. Because the challenged testimony clearly falls under the excited-utterance exception to the hearsay rule, the circuit court's decision to admit the evidence was not an abuse of discretion.

### V. Transcript of Statement

Bell next alleges that the circuit court erred in admitting a transcript of his statement to the police. Over objection by defense counsel, copies of the transcript were passed out to the jury to be used as a guide while the tape of the statement played. Bell's argument is twofold. He claims that the tape was the best evidence of the statement and that the admission of the transcript violated the best-evidence rule. He further claims that the circuit court erred in not making a finding as to the accuracy of the transcript.

We find no merit in Bell's best-evidence argument. The best-evidence rule provides that, when proving the contents of a recording, the original recording is generally required. *See* Ark. R. Evid. 1002 (2007). Here, the tape recording was admitted

into evidence. Therefore, the best–evidence rule was satisfied. The rule, which requires the submission of the most reliable evidence, was not violated by the admission of additional evidence.

Our court has upheld a circuit court's decision to allow both the transcript and the recording of a defendant's statement. *See Baysinger v. State*, 261 Ark. 605, 550 S.W.2d 445 (1977). The *Baysinger* case presents facts very similar to those in this case. In *Baysinger*, police officers created a transcript of a recorded statement, leaving blanks or notations at points where the conversation was unintelligible. *Id.* Over the defendant's objection, the transcript was passed out for jurors to look at while the recording was being played. *Id.* Witnesses testified that the transcript was accurate, and the defendant could point to no prejudicial misrepresentations. *Id.* This court held the transcript was admissible, stating admission was the "better policy where as here the transcription is shown to be accurate and it would be necessary to replay the recording for the jurors several times unless the transcription is used." *Id.* at 613, 550 S.W.2d at 450. We have continued to follow the policy of allowing accurate transcripts to be used alongside recordings that may be difficult to understand. *See, e.g., Leavy v. State*, 314 Ark. 231, 862 S.W.2d 832 (1993).

The transcript at issue here contains notations referring to inaudible or unintelligible dialogue. It was used for the same reason set forth in *Baysinger*. Sergeant Mauk testified that he had compared the transcript with the tape and concluded that the transcript was accurate. Furthermore, there are no material misrepresentations that would prejudice Bell.[3] If the audio tape had been played without the transcript, it would have been necessary to replay the recording several times in order to ensure the jurors' understanding of the statement.

With regard to Bell's contention that the circuit court should have made a finding as to the accuracy of the transcript, that is simply not a requirement under our case law. The case he cites for that assertion actually states that, when a witness testifies to the accuracy of the transcript and where it may be necessary to use the transcript in addition to the recording in order to ensure the jurors' understanding of the content, the decision to use the transcript is

---

[3] The only inaccuracies pointed out by defense counsel below are the names of the other children in the car. The names of S.C. and J.B. were misstated at one point but were later corrected.

discretionary with the trial court. *Leavy v. State, supra.* We have held that there is no abuse of that discretion when the appellant cannot demonstrate prejudice. *Id.* Similarly, Bell has failed to demonstrate prejudice in the instant case. Thus, the circuit court did not abuse its discretion in allowing the use of the transcript in addition to the recording.

## VI. Prior Sex Offenses as a Juvenile

Bell's final point of appeal concerns evidence admitted at the sentencing phase of his trial. As a juvenile, he was adjudicated delinquent for two sex offenses, felony rape and misdemeanor sexual assault. The circuit court permitted testimony on this subject from the victims in those two cases. The court prohibited disclosure of the adjudication for sexual assault but allowed the State to establish, through the testimony of the victim's father, that Bell was adjudicated delinquent for rape. Bell does not contest the admissibility of the fact of adjudication on the rape charge. He agrees that, pursuant to Ark. Code Ann. § 9-27-345(a) (Repl. 2002), the adjudication of delinquency for rape, an offense for which he could have been tried as an adult, may be used at the sentencing phase in subsequent adult criminal proceedings against him. Likewise, the State did not contest the inadmissibility of the adjudication for sexual assault, as it was a misdemeanor for which Bell could not have been tried as an adult. Therefore, we need only consider the testimony of the victims regarding the facts and circumstances that led to both charges.

Pursuant to Ark. Code Ann. § 16-97-103(6) (Repl. 2006 & Supp. 2007), evidence of aggravating circumstances is admissible at sentencing. Section 16-97-103 also refers to the criteria for departure from the sentencing standards as examples of evidence of aggravating circumstances. *Id.* One such criterion is that "[t]he offense was a sexual offense and was part of a pattern of criminal behavior with the same or different victims under the age of eighteen (18) years of age manifested by multiple incidents over a prolonged period of time." Ark. Code Ann. § 16-90-804(c)(2)(F) (Repl. 2006 & Supp. 2007). The testimony of the victims in Bell's prior rape and sexual assault cases shows a pattern of criminal behavior with victims under the age of eighteen. Therefore, such testimony is admissible as evidence of an aggravating circumstance.

Bell nonetheless contests the admissibility of this evidence on the basis of Ark. Code Ann. § 9-27-345 (Repl. 2002). This section reads as follows, in its entirety:

> (a) Juvenile adjudications of delinquency for offenses for which the juvenile could have been tried as an adult may be used at the sentencing phase in subsequent adult criminal proceedings against those same individuals.
>
> (b)(1) No other evidence adduced against a juvenile in any proceeding under this subchapter nor the fact of adjudication or disposition shall be admissible evidence against such juvenile in any civil, criminal, or other proceeding.
>
> (b)(2) However, the evidence shall be admissible where proper in subsequent proceedings against the same juvenile under this subchapter.

Ark. Code Ann. § 9-27-345. Clearly, subsection (a) refers to evidence that is admissible at the criminal trial of an adult who was adjudicated delinquent when he or she was a juvenile. Conversely, subsection (b)(2) refers to evidence that is admissible at a subsequent juvenile proceeding of a person who remains a juvenile.[4] Subsection (b)(1), however, is the source of contention on this subject. Bell suggests that no evidence adduced at the prior juvenile proceeding (i.e., evidence regarding the facts and circumstances leading to the charge) is admissible at any subsequent proceeding, even after the juvenile becomes an adult. We disagree.

The legislature used the term "juvenile" in subsections (b)(1) and (b)(2), as contrasted with the term "individuals," used in subsection (a) to refer to juveniles who had become adults. The basic rule of statutory interpretation is to give effect to the intent of the legislature. *McKeever v. State*, 367 Ark. 374, 240 S.W.3d 583 (2006). We construe a statute just as it reads, giving the words their ordinary and usually accepted meaning. *Id.* In addition, when the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to the rules of statutory interpretation. *Id.* Because Ark. Code Ann. § 9-27-345(b) refers exclusively to the admissibility of evidence

---

[4] "[T]his subchapter" refers to the Juvenile Code.

against a "juvenile," that statutory provision is inapposite in a case involving an adult defendant. Therefore, Bell cannot claim protection under this statute. The circuit court did not abuse its discretion in admitting the testimony of the victims.

## VII. Rule 4-3(h) Review

Pursuant to Ark. Sup. Ct. R. 4-3(h) (2007), the record in this case has been reviewed for all objections, motions, and requests made by either party, which were decided adversely to Bell, and no prejudicial error has been found.

Affirmed.

HANNAH, C.J., and DANIELSON, J., concur in part, and dissent in part.

JIM HANNAH, Chief Justice, concurring in part; dissenting in part. I concur in the court's decision on admission of evidence under Ark. R. Evid. 404(b) based on the principle of stare decisis. I dissent to the court's decision that Ark. Code Ann. § 9-27-345 (Repl. 2002) permits admission of testimony from victims of prior juvenile delinquency adjudications in subsequent adult criminal proceedings concerning unrelated crimes.

Section 9-27-345 provides as follows:

> (a) Juvenile adjudications of delinquency for offenses for which the juvenile could have been tried as an adult may be used at the sentencing phase in subsequent adult criminal proceedings against those same individuals.

> (b)(1) No other evidence adduced against a juvenile in any proceeding under this subchapter nor the fact of adjudication or disposition shall be admissible evidence against such juvenile in any civil, criminal, or other proceeding.

> (2) However, the evidence shall be admissible where proper in subsequent proceedings against the same juvenile under this subchapter.

The majority concludes that subsection (b)(1) is the source of contention. I disagree. Subsection (a) is dispositive of this issue. Bell correctly argues that the only evidence admissible under section

9-27-345 in an adult criminal proceeding is the fact and the nature of the juvenile adjudication. Subsection (a) is at issue. Bell's separate arguments about any effect of subsection (b) are superfluous and irrelevant to this discussion. The majority errs in discussing subsection (b).

As the majority notes, Bell does not dispute the admissibility of his juvenile adjudication of delinquency based on rape. Subsection (a) plainly makes certain "[j]uvenile adjudications" admissible at subsequent adult criminal proceedings. Rape is included because Bell certainly could have been prosecuted as an adult for that crime. *See* Ark. Code Ann. § 5-14-103 (Repl. 2006).

There are no opinions of this court interpreting the meaning of the term "[j]uvenile adjudications." "An 'adjudication' is simply a judicial determination." *Sikes v. Gen. Publ'g Co., Inc.*, 264 Ark. 1, 6, 568 S.W.2d 33, 35 (1978) (quoting *Webster's New International Dictionary* 33 (2d ed. 1939)). The term adjudication is not defined in our Juvenile Code. *See* Ark. Code Ann. § 9-27-303 (Supp. 2003). An "[a]djudication hearing" is defined in the juvenile code as "a hearing to determine whether the allegations in a petition are substantiated by the proof." Ark. Code Ann. § 9-27-345(4) (Supp. 2003). Thus, at a hearing, the evidence is admitted and a decision is reached. As stated in *Sykes, supra*, that decision constitutes an adjudication. In Utah, " 'Adjudication' is a defined term both in the Utah Rules of Juvenile Procedure and in related statutes that refer to a finding by the court, incorporated in a judgment or decree, that the facts alleged in the [petition alleging the court's jurisdiction] have been proved." *Office of the Guardian Ad Litem ex rel. S.M.*, 154 P.3d 835, 848 (Ut. 2007). It is clear that the term "[j]uvenile adjudications" as used in section 9-27-345 refers to admission of the prior convictions and their nature. This is consistent with similar provisions in the Criminal Code:

> The trial court shall then instruct the jury as to the number of prior felony convictions and the statutory sentencing range.

> The jury may be advised as to the nature of a prior felony conviction and the date and place of a prior felony conviction;

Ark. Code Ann. § 5-4-502(3)(A), (B) (Repl. 2006). Section 9-27-345 authorizes the circuit court to inform the jury of the juvenile adjudications and their nature. It does not permit the prosecuting attorney to put witnesses on the stand from the earlier cases to testify as to the facts

of the earlier crimes. Even though the evidence was admitted in sentencing, the inadmissible evidence could influence the jury to sentence for the prior juvenile offense rather than for the offense charged. It puts the criminal defendant again in jeopardy on a crime for which he or she has already been convicted. This is an issue exclusive of section 9-27-345 that would have to be considered regardless as it implicates both double jeopardy and res judicata. *See Mason v. State*, 361 Ark. 357, 206 S.W.3d 869 (2005). This case should be reversed for resentencing.

DANIELSON, J., joins.