78-144. Robert SIKES, Printing Administrator,
et al *v.* GENERAL PUBLISHING COMPANY, INC.

78-162. STATE PRINTING BOARD et al *v.*
THE HURLEY COMPANY, INC.

78-144 & 78-162                    568 S.W. 2d 33

Opinion delivered July 17, 1978
(In Banc)

2

78-144. *Bill Clinton*, Atty. Gen., by: *Peggy O'Neal*, Asst. Atty. Gen., for appellants.

78-144. *Patten, Brown, Leslie & Davidson*, by: *Charles A. Brown*, for appellee.

78-162. *Bill Clinton*, Atty. Gen., by: *Peggy O'Neal*, Asst. Atty. Gen., for appellants.

78-162. *Gaughan, Barnes, Roberts, Harrell & Laney*, by: *Allen P. Roberts*, for appellee.

GEORGE ROSE SMITH, Justice. For the purpose of this opinion we have consolidated these two appeals, one from the Pulaski Circuit Court and the other from the Ouachita Circuit Court.

The cases involve four state printing contracts that were at first awarded by the State Printing Board to the Hurley Company, as the lowest bidder. Within a few days after the execution of the original contracts the Board's attention was called to the fact that the Hurley Company had not filed performance bonds within the time allowed by the Board's regulations (7 days as to one contract, 10 days as to the other

three). The Board promptly reviewed the matter at a meeting held on January 6, 1978, and voted to rescind the original contracts and to award three of them to the next lowest bidders and to readvertise the fourth, on which Hurley had been the only bidder.

These two lawsuits followed. Hurley sued the State Printing Board and its chairman, in the Ouachita Circuit Court, contending that it was taking an appeal under the Administrative Procedure Act from an adjudication by the Board. Ark. Stat. Ann. § 5-713 (Repl. 1976). The court first issued a temporary order staying any further action by the Board. When the case was reached on its merits the court held that Hurley had substantially complied with the performance bond requirement and that the Board had waived strict compliance by executing the contracts with Hurley. Case No. 78-162 is an appeal from that decision.

In the second case, General Publishing Company, which had been awarded one of the contracts as the second lowest bidder, brought suit in the Pulaski Circuit Court for a writ of mandamus to compel Robert Sikes, as Printing Administrator, to perform the ministerial act of delivering that contract, which had actually been prepared and signed for the Board before the restraining order was issued in Ouachita County. Case No. 78-144 is an appeal from the judgment of the Pulaski Circuit Court issuing the requested writ of mandamus.

The essential facts are not in dispute, having been stipulated in both cases. A regulation of the State Printing Board contains this provision, which was made known to all bidders: "Bidders must comply literally with all rules, regulations, laws, specifications, instructions, general provisions, and special provisions." Another regulation provides that "the bidder will be required within seven (7) days [or 10 days] of the awarding of the contract to post a commercial performance bond" in a specified amount, depending upon the amount of the bid.

In November, 1977, the Board determined that Hurley was the low bidder on the four contracts now in question.

Hurley was duly notified of the award, but it failed to post the required performance bonds within the period allowed by the regulations. Instead, on the last day Hurley filed a letter to the Printing Administrator, signed by an attorney-in-fact for a bonding company, saying with respect to one contract, for example, that a bond had been issued by the company's Chicago office, that it was "enroute to me via U.S. Mail," and that it would be delivered to the Printing Administrator upon its receipt by the attorney-in-fact. The chairman of the Printing Board, acting on his own initiative, decided that the letter was sufficient and signed the contracts, along with the Printing Administrator. The contracts were sent to Hurley.

When other bidders learned that Hurley had not filed its performance bonds within the time allowed, they filed protests with the Board. The matter was at once placed on the agenda for the scheduled January 6 meeting of the Board. Representatives of Hurley and of General Publishing Company attended the meeting and were allowed to state their positions, but no testimony was taken. After an extended discussion, which was recorded, the nine-member Board adopted motions, by votes of 7 to 1 and 7 to 0, rescinding the contracts because the performance bonds had not been filed by Hurley and, as we have said, directing that the contracts be awarded to the next lowest bidders or be readvertised where Hurley was the only bidder.

We consider first the Ouachita County case. The State Printing Law, Act 544 of 1975, created the State Printing Board and included among its duties that of serving "as appeals and review board for . . . contractors or prospective bidders over disputes arising from administration of the State Printing Law." Ark. Stat. Ann. § 14-307 (Supp. 1977). Hurley relies upon that language of the statute to support its argument that the action taken by the Board on January 6 was an "adjudication" that was subject to judicial review under the Administrative Procedure Act.

That argument cannot be sustained. Administrative boards and commissions act at times administratively and at times judicially or quasi-judicially. But courts act judicially in reviewing administrative proceedings. The distinction is fundamental under the constitutional separation of powers.

The Administrative Procedure Act makes it clear that, under the act, the courts' appellate review is confined to adjudications and does not extend to administrative rulings. An "adjudication" is simply a judicial determination. Webster's New International Dictionary (2d ed., 1939). We quote the pertinent provisions of the Administrative Procedure Act, which make it clear that only "adjudications" are to be subject to direct appellate review by the courts:

> Order and Adjudication — "Order" means the final disposition of an agency in any matter . . . in which the agency is required by law to make its determination after notice and hearing. "Adjudication" means agency process for the formulation of an order. [Ark. Stat. Ann. § 5-701 (d).]

> \* \* \* \* \*

> In every case of adjudication, a final decision or order shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated. . . . Parties shall be served either personally or by mail with a copy of any decision or order. [§ 5-710 (b).]

> \* \* \* \* \*

> (a) In cases of adjudication, any person who considers himself injured in his person, business, or property by final agency action shall be entitled to judicial review thereof under this Act. Nothing in this Section shall be construed to limit other means of review provided by law.
>
> (b) Proceedings for review shall be instituted by filing a petition
>> (1) in the Circuit Court of any county in which the petitioner resides or does business.

> \* \* \* \* \*

> (d) Within thirty days after service of the petition, or within such further time as the court may allow, but not exceeding an aggregate of ninety days, the agency

shall transmit to the reviewing court the original or a certified copy of the entire record of the proceeding under review. [§ 5-713.]

It seems too clear for argument that the action taken by the Printing Board at its meeting on January 6 was not such *an adjudication* under the Administrative Procedure Act as to be subject to review in Ouachita County. The Board was not required by law to make its determination after notice and a hearing. The Board heard no testimony. It made to findings of fact or conclusions of law. No copy of any decision or order was served on the parties. No record of the proceedings was certified by the Board to the Ouachita Circuit Court, which heard the matter simply on a complaint filed by Hurley.

All that happened at the January 6 meeting was that the Board acted upon an administrative matter that was on its agenda. There was no adjudication within the purview of the Administrative Procedure Act. We do not imply that if Hurley's property rights were adversely affected by the action taken at the meeting, it might not have had a remedy, as by seeking a writ of certiorari in Pulaski County, where state agencies are subject to suit. Ark. Stat. Ann. § 27-603 (Repl. 1962). But the Ouachita Circuit Court had no jurisdiction in the matter and should have sustained the Board's motion to dismiss the complaint. We therefore reverse the judgment of that court and dismiss the action.

Turning to the Pulaski County case, we come at once to the merits. The State Printing Board has explicit statutory authority to adopt regulations and procedures for the discharge of its duties and responsibilities. § 14-307. The Board's regulations warned bidders in the clearest possible language that literal compliance with its rules is required. Hurley did not comply literally with the requirement that a performance bond be posted within 7 or 10 days. The submission of a letter saying that a bond is in the mail and will be filed when received is not a literal compliance with the plain requirement that a bond be posted within a certain time. Thus the Board was unquestionably correct in deciding at its January 6 meeting that the Hurley contracts should be rescinded for noncompliance with the regulations.

There is no basis for holding that the Board waived its rule requiring literal compliance. When the bids were opened in November the Board quite properly awarded the contracts to Hurley as the low bidder. But, while the Board was not in session, its chairman decided by himself that Hurley was entitled to the contracts despite its failure to submit timely performance bonds. The chairman, of course, had no authority to make the decision for the nine-man board. When the Board met in January it correctly decided that the contracts should be rescinded. Thus, on the merits, General Publishing Company's position is correct.

Nevertheless, the Printing Administrator and Hurley question General Publishing Company's right to relief by mandamus. It is argued that the proper remedy was by a writ of certiorari to review the action of the Board. This argument disregards the obvious fact that General Publishing Company had no reason to question the Board's January decision by certiorari or otherwise, because that decision was in its favor.

General Publishing Company's grievance was simply that, after its contract had been executed on behalf of the Board, the Printing Administrator failed to perform the ministerial duty of placing it in an envelope and putting it in the mail. The Printing Administrator, as a witness, failed to offer any plausible explanation for his failure to act. There was certainly no question of fact for him to decide, in which case he might have had some discretion in the matter. *Massey v. Enfield,* 259 Ark. 85, 531 S.W. 2d 706 (1976). In the circumstances the Pulaski Circuit Court properly issued the writ to require the Printing Administrator to perform his statutory duty to deliver a contract that had been approved by the Board and properly executed. § 14-309 (A) (5). There was certainly no reason for the issuance of a writ of mandamus against the Board, which had fully and properly performed its duty.

In Case No. 78-162 the judgment is reversed and the cause dismissed. In Case No. 78-144 the judgment is affirmed. Inasmuch as both cases were advanced on motion as a matter of public interest, we find good cause for the

issuance of an immediate mandate in each case. It is so ordered.

HARRIS, C.J., concurs as to the result.

HICKMAN, J., dissents in No. 78-144.

DARRELL HICKMAN, Justice, dissenting. I dissent from the result reached by the majority because I feel that mandamus is not the proper remedy under these facts.

It is well-settled law that mandamus will not lie where there is an adequate remedy at law. It is essential that before the writ can be issued, the petitioner must show a clear and certain legal right to the relief sought and have no other adequate remedy at law. *Girley* v. *Wood, Judge,* 258 Ark. 408, 525 S.W. 2d 454 (1975). The purpose of the writ is not to establish a legal right, but to enforce a legal right that already exists. *Naylor* v. *Goza, Judge,* 232 Ark. 515, 338 S.W. 2d 923 (1960). Perhaps most important to this case is the rule that mandamus will not lie when an issue of fact is present. *Mothershead* v. *Ponder, Chancellor,* 220 Ark. 816, 250 S.W. 2d 121 (1952).

These principles have been lost to the fact that this appeal is the consolidation of two separate circuit court actions. The appropriate action for General Publishing Company would have been to challenge the action of the State Printing Board, as was done in the Ouachita Circuit Court, rather than seek the mandamus against Sikes. Intervention in that action would have overcome the necessity of seeking the mandamus in the Pulaski Circuit Court, and even if the ruling was adverse, the appeal to this court would be preserved as shown by a portion of the majority opinion.

As noted, the purpose of this extraordinary writ is not to establish a legal right, which in effect has been done here, but to enforce a right that *has already been established*. Further, there must be no factual dispute as to whether that right had been established. In this case, the very existence of the Ouachita Circuit action was evidence that no legal right had been established; also, the factual dispute present in that action, i.e., whether the actual bond had to be posted, or whether

notification that the bond was forthcoming was sufficient, certainly was an issue in the Pulaski Circuit action. It is difficult to understand why the fact that these two cases were consolidated on appeal should serve as the means for ignoring what we have established as precedent for the review of mandamus cases.

I am also not convinced that the mandamus was issued against the proper person. Robert Sikes was the State Printing Administrator, and if there was no dispute he could have simply made the contract to General Publishing Company a ministerial act. However, at the time the Pulaski Circuit action was filed, Sikes was effectively controlled by a stay order issued in the Ouachita Court. Although he was not made an actual party to the Ouachita action until after the mandamus was filed, he was nevertheless controlled by the stay order. His act of discretion, then, was really a matter of whether to act in contempt of a court order.

Sikes had received three orders from the State Printing Board. He was first told to issue the contracts to Hurley Publishing Company. He was then told by Jim Wooten, the chairman of the State Printing Board, to go ahead and issue the contracts despite the fact the actual commercial bond had not been posted during the requisite period of time. Finally, he was told by the State Printing Board to issue the contract to General Publishing Company. After all of this, he was told by Wooten not to issue the contract to anyone because of a court order. Only after the issue of compliance had been decided would mandamus be proper to force Sikes to mail the contracts to General Publishing Company. I do not disagree with the ultimate result reached by the court. Hurley did not literally comply with the rules and I would reverse the Ouachita Circuit Court on the merits.