2010 Ark. 277

Carol WALKER, Individually And On Behalf Of Her Minor Children Rachel Walker, James Walker, and Heather Walker; Patrick O'Bryant And Tawnya O'Bryant, Husband and Wife, Individually and on Behalf Of Their Minor Children, Christopher O'Bryant and Sean O'Bryant; Jerry Ferguson, Individually and on Behalf of his Minor Children Kole Ferguson, Kerra Ferguson, and Kannon Ferguson; And Keli Waggoner, Individually and on Behalf of Her Minor Children Jaycee Waggoner And Bradley Halsell, Appellants,

v.

ARKANSAS STATE BOARD OF EDUCATION, Appellee

Two Rivers School District, Appellee/Intervenor.

No. 09–1253.

Supreme Court of Arkansas.

June 3, 2010.

John C. Fendley, Jr., P.A., by: Clay Fendley, Little Rock, and Streett Law Firm, P.A., by: Alex G. Streett and James A. Streett, Russellville, for appellants/cross-appellees.

Jennifer Williams Flinn and Jeremy C. Lasiter, Ark. Dep't of Educ., and Dustin McDaniel, Att'y Gen., by: Warren T. Readnour, Sr. Ass't Att'y Gen., for appellee/cross-appellant.

Bequette & Billingsley, P.A., by: Jay Bequette, and Scott Smith, Little Rock, for intervenor.

PAUL E. DANIELSON, Justice.

Appellants Carol Walker, individually and on behalf of her minor children Rachel Walker, James Walker, and Heather Walker; Patrick O'Bryant and Tawnya O'Bryant, husband and wife, individually and on behalf of their minor children Christopher O'Bryant and Sean O'Bryant; Jerry Ferguson, individually and on behalf of his minor children Kole Ferguson, Kerra Ferguson, and Kannon Ferguson; and Keli Waggoner, individually and on behalf of her minor children Jaycee Waggoner and Bradley Halsell (hereinafter collectively "the Parents") appeal from the circuit court's order affirming the decision of appellee the Arkansas State Board of Education (Board), which granted appellee/intervenor the Two Rivers School District's petition for approval to close the Fourche Valley K–12 school campus. Their sole point on appeal is that the circuit court erred in affirming the Board's decision approving the closure of Fourche Valley Elementary and High School because the Board should be enjoined from acting on petitions for closure until the State fulfills its constitutional duty to define "excessive transportation time" and to adequately fund Arkansas school districts' transportation needs. The Board cross-appeals, arguing that the circuit court erred by failing to dismiss the Parents' petition for judicial review (1) because the Arkansas Administrative Procedure Act (APA) did not apply, and (2) for lack of standing. We affirm both on direct appeal and on cross-appeal.

The instant appeal stems from the Two Rivers School District's Board of Directors' 6–1 vote to close the Fourche Valley K–12 campus, as an isolated school.[1] The closure was to become effective on June 30, 2009. In accord with Arkansas Code Annotated § 6–20–602 (Repl.2007), the District filed a petition for approval of closure with the Board. On April 13, 2009,

---

1. Arkansas Code Annotated § 6–20–602(a) (Repl.2007) provides that:
 (a) "Isolated school" means a school within a school district that:
 (1) Prior to administrative consolidation or annexation under this section, § 6–13–

1601 et seq., and § 6–13–1405(a)(5) qualified as an isolated school district under § 6–20–601; and
 (2) Is subject to administrative consolidation or annexation under this section,
 § 6–13–1601 et seq., and § 6–13–1405(a)(5).

the Board held a hearing on the petition and voted 5–2 to approve the District's petition.

On May 12, 2009, the Parents filed a petition for judicial review pursuant to the APA, naming the Board and the District as defendants. In their petition, they claimed that they would be "dramatically and negatively impacted" by the District's attempt to close the Fourche Valley campus. Specifically, they alleged that

> [i]f this attempt [to close] is effectuated, some of these children, including those as young as kindergarten and pre-school age, will be force [sic] to ride buses for up to an additional 45 additional [sic] minutes per day *for a total of up to four hours per day,* and to leave the safety and oversight of their local community, friends, and family to attend classes in a foreign community.

They further averred that the Board could not evaluate the District's best interest, when the District refused to disclose to the Board or others the fiscal information related to any alternatives to closure.

On May 28, 2009, the Parents filed their first amended petition for judicial review. In that petition, the Parents alleged that their children's fundamental rights to an adequate educational opportunity would be denied if the Fourche Valley schools were closed in that closure would force them "to endure total transportation time of up to four hours a day with an undetermined negative impact on their academic achievement." They maintained that the General Assembly had recognized that student transportation was a necessary component of an ade-

quate education, and they asserted that the decision of the District and the Board to close was not supported by substantial evidence; was arbitrary, capricious, and an abuse of discretion; and was in violation of their fundamental rights.[2]

On June 12, 2009, the Board moved to dismiss the Parents' petition for judicial review. It alleged that the petition was barred because the APA did not apply to the Board's consideration of the District's petition, as there was no adjudication before the Board. Accordingly, the Board urged, the circuit court was without jurisdiction. The Board further asserted that the Parents lacked standing to seek review, as they failed to allege sufficient facts to show that they suffered an injury to their persons, business, or property as a result of the Board's action. Finally, the Board asserted, the petition was barred by the doctrine of res judicata in that the constitutional claims raised by the Parents were fully litigated and resolved in the *Lake View School District* litigation.[3] The same day, the Board filed the transcript of the April 13 hearing at which the vote was taken.

Also on that day, the District filed its motion to dismiss and, alternatively, motion to intervene. In it, the District averred that the Parents' petition for judicial review was barred as to the District, because the District was not a state agency for purposes of the APA. For that reason, it claimed the circuit court lacked jurisdiction to hear the petition as against it. It further asserted, like the Board, that the petition was barred because the APA did not apply to the Board's consider-

**2.** Alternatively, the Parents invoked their statutory right to demand judicial review of the administrative decision and to obtain the fiscal data from the District cited by it in its petition to close, as well as the fiscal data from the District related to the alternative, partial closing of solely the 7th–12th grade programs.

**3.** While not pertinent to this appeal, the Board also asserted a failure of service.

ation of the District's petition, due to the lack of an adjudication; thus, the circuit court lacked jurisdiction. Finally, it claimed that the Board had not issued a final order as required by the APA, the Parents lacked standing, and the Parents' claims were barred by res judicata. In the alternative, the District asserted, should the circuit court not dismiss the petition as against the Board, the District should be permitted to intervene.

The circuit court held a hearing on the foregoing on June 26, 2009, and on July 8, 2009, the circuit court filed an order denying the Board's motion to dismiss, granting the District's motion to dismiss and motion to intervene, and dismissing the Ferguson family as plaintiffs. In addition, the circuit court remanded the matter to the Board to adopt findings of fact and conclusions of law. On July 13, 2009, the Board held another hearing on the matter and issued findings of fact and conclusions of law, which the Board then filed with the circuit court. On July 14, 2009, the District filed its supplemental motion to dismiss the remaining Parents for lack of standing, on the basis that their students had transferred to other districts.

The next day, the Parents filed their supplemental petition for judicial review, response to the District's first supplemental motion to dismiss, and motion for reconsideration. They contended that it was irrelevant where their children were going to school, as they were injured and their constitutional rights violated by the closure of the Fourche Valley campus. They alleged that they had been forced to choose among unconstitutional alternatives and that ₆their standing was not lost simply because they had taken steps to mitigate their constitutional injury. They further urged the circuit court to reconsider its dismissal of the Fergusons.

On July 16, 2009, the circuit court held a second hearing. At that hearing, the circuit court ruled that the Parents had standing, that there was substantial evidence for the closing, and that the Board's decision was not arbitrary or capricious. It then memorialized those rulings in its order of August 10, 2009, wherein the circuit court made the following findings, in pertinent part:

7. This Court held a second hearing on July 16, 2009. After reviewing all arguments presented, this Court denies the Two Rivers School District's second motion to dismiss and finds that the petitioners have standing to petition for judicial review. This Court grants the petitioners' motion for reconsideration of its previous ruling regarding standing and reinstates the Fergusons as petitioners.

8. This Court further finds that there is substantial evidence to support the State Board of Education's ruling to approve the closure of the Fourche Valley campus. The Board's ruling is not arbitrary or capricious or in violation of constitutional or statutory provisions. The Board's ruling and subsequent entry of Findings of Fact and Conclusions of Law were not made upon unlawful procedure.

THEREFORE, pursuant to Ark.Code Ann. § 25–15–212, the decision of the Arkansas State Board of Education approving the closure of the Fourche Valley K–12 campus as reflected in its "Findings of Fact, Conclusions of Law and Order" is affirmed.

The Parents now appeal and the Board cross-appeals. Because both points on cross-appeal raise the possibility of a dismissal, we address them first.

*I. Applicability of the APA*

For its first point on cross-appeal, the Board urges that the circuit court erred in

failing to dismiss the Parents' petition for judicial review. It claims that the APA does not apply to the Board's approval of the District's petition for closure, as that decision was not an adjudication, but "only a routine administrative ruling" pursuant to Ark.Code Ann. § 6–20–602. For that reason, it claims, the circuit court was without jurisdiction to consider the Parents' petition. The Parents respond that the APA applies and that the circuit court did not abuse its discretion in denying the Board's motion to dismiss.

Our standard of review for the denial of a motion to dismiss is whether the circuit court abused its discretion. *See Arkansas Dep't of Envt'l Quality v. Oil Producers of Arkansas,* 2009 Ark. 297, 318 S.W.3d 570. The question of whether a petition for judicial review under the APA is based upon a final agency decision is a jurisdictional matter that a court can address at any time. *See Munson v. Arkansas Dep't of Corr. Sex Offender Screening & Risk Assessment,* 369 Ark. 290, 253 S.W.3d 901 (2007).

Arkansas Code Annotated § 25–15–212(a) permits that, "[i]n cases of adjudication, any person, except an inmate under sentence to the custody of the Department of Correction, who considers himself or herself injured in his or her person, business, or property by final agency action shall be entitled to judicial review of the action under this subchapter." Ark.Code Ann. § 25–15–212(a) (Repl.2002). The Board contends that its approval of the District's petition for closure was not an adjudication subject to the APA; however, we disagree.

This court has previously observed, in the context of granting a writ of prohibition, that the Arkansas State Board of Education is an administrative agency, whose decisions are subject to appeal as governed by the APA. *See Arkansas State Bd. of Educ. v. Purifoy,* 292 Ark. 526, 731 S.W.2d 209 (1987) (per curiam). In *Purifoy,* relied on by the Parents, this court held that a chancery court did not have jurisdiction to hear an action filed by a school district against the Board because the Quality Education Act of 1983, then Ark. Stat. Ann. § 80–4606, provided that appeals from rulings by the State Board of Education may be made to a "court of competent jurisdiction." *Id.* at 527, 731 S.W.2d at 209. This court then deemed a court of competent jurisdiction to be the circuit court. *See id.*

Section 80–4606 of the Arkansas Statutes Annotated is now codified as Ark. Code Ann. § 6–15–203, which pertains to the notification by the Department of Education to school districts failing to meet standards for accreditation for elementary and secondary schools. *See* Ark.Code Ann. § 6–15–203 history (Repl.2007). In that section, school districts are permitted the right to appeal to the State Board of Education the Department's determination if the school district believes the Department has improperly determined that a school or district fails to meet the accreditation standards. *See* Ark.Code Ann. § 6–15–203(b)(1). But in addition, as part of the Omnibus Quality Education Act of 2003, the General Assembly amended the provision cited in our *Purifoy* decision to provide that an aggrieved school district may appeal the Board's ruling "to Pulaski County Circuit Court pursuant to the Arkansas Administrative Procedure Act, § 25–15–201 et seq." Ark.Code Ann. § 6–15–203(b)(5). Thus, the General Assembly has now specifically provided that such appeals may be had pursuant to the APA. While that may be, the Board's decision in the instant case does not fall within section 6–15–203, thus, *Purifoy* is inapposite. Nonetheless, we hold that the APA is applicable to a decision by the Board regard-

ing a petition for closure pursuant to section 6–20–602.

As set forth above, the APA applies to "final agency action." Ark.Code Ann. § 25–15–212(a). "Agency" is defined within the Act as "each board, commission, department, officer or other authority of the government of the State of Arkansas, whether or not within, or subject to review by, another agency, except the General Assembly, the courts, and Governor" and includes "the Division of Child Care and Early Childhood Education of the Department of Human Services and the Child Care Appeal Review Panel for purposes of administrative appeal." Ark.Code Ann. § 25–15–202(2)(A)–(B) (Supp.2009). However, the General Assembly has made clear that "agency" does not include "the Arkansas Public Service Commission, the Arkansas Pollution Control and Ecology Commission, the Workers' Compensation Commission, and the Department of Workforce Services, it being determined by the General Assembly that the existing laws governing those agencies provide adequate administrative procedures for those agencies." Ark.Code Ann. § 25–15–202(2)(C). Pursuant to the plain language defining the term "agency," it is clear to this court that the State Board of Education is an agency for purposes of the APA.

But still, the right to judicial review under the APA is limited to "cases of adjudication." Ark.Code Ann. § 25–15–212(a). "Adjudication" is defined within the APA as the "agency process for the formulation of an order." Ark.Code Ann. § 25–15–202(1)(A). "Order" is defined as "the final disposition of an agency in *any* matter other than rule making, including licensing and rate making, in which the agency is required by law to make its determination after notice and hearing." Ark.Code Ann. § 25–15–202(5) (emphasis added). Where there has been no adjudi-

cation before the administrative agency, there has been no final agency action to be reviewed pursuant to section 25–15–212. *See Arkansas Prof'l Bail Bondsman Licensing Bd. v. Frawley,* 350 Ark. 444, 88 S.W.3d 418 (2002).

Claiming there was no adjudication, the Board argues that its decision to approve or disapprove of a district's petition is an administrative decision, rather than a judicial one. In *Sikes v. General Publishing Co., Inc.,* 264 Ark. 1, 568 S.W.2d 33 (1978), this court drew a distinction between the two, stating:

> Administrative boards and commissions act at times administratively and at times judicially or quasi-judicially. But courts act judicially in reviewing administrative proceedings. The distinction is fundamental under the constitutional separation of powers.
>
> The Administrative Procedure Act makes it clear that, under the act, the courts' appellate review is confined to adjudications and does not extend to administrative rulings. An "adjudication" is simply a judicial determination. *Webster's New International Dictionary* (2d ed., 1939).
>
> . . . .
>
> It seems too clear for argument that the action taken by the Printing Board at its meeting on January 6 was not such *an adjudication* under the Administrative Procedure Act as to be subject to review in Ouachita County. The Board was not required by law to make its determination after notice and a hearing. The Board heard no testimony. It made no findings of fact or conclusions of law. No copy of any decision or order was served on the parties. No record of the proceedings was certified by the Board to the Ouachita Circuit Court, which heard the matter simply on a complaint filed by Hurley.

All that happened at the January 6 meeting was that the Board acted upon an administrative matter that was on its agenda. There was no adjudication within the purview of the Administrative Procedure Act. We do not imply that if Hurley's property rights were adversely affected by the action taken at the meeting, it might not have had a remedy, as by seeking a writ of certiorari in Pulaski County, where state agencies are subject to suit. Ark. Stat. Ann. § 27–603 (Repl.1962). But the Ouachita Circuit Court had no jurisdiction in the matter and should have sustained the Board's motion to dismiss the complaint. We therefore reverse the judgment of that court and dismiss the action.

264 Ark. at 5–7, 568 S.W.2d at 35–36 (emphasis in original). In *Sikes,* the State Printing⌊₁₁⌋Board awarded several printing contracts to the Hurley Company; however, a few days after the execution of the contracts, the Board was informed that the company had failed to file performance bonds within the required time. *See id.* The Board reviewed the matter at a meeting and voted to rescind the contracts and award them to other bidders. *See id.* The Hurley Company then sued the Board under the APA. *See id.* That differs from the decision at issue in the instant case.

█ In this case, pursuant to the statute, the District was prevented from closing the Fourche Valley campus unless it adopted a motion to close the school either by a unanimous vote or a majority vote *and* with consideration and approval by a majority of the Board. *See* Ark.Code Ann. § 6–20–602(b)(1)–(2)(A). The statute further provided that the Board "shall only approve a motion to close isolated schools or parts thereof . . . if the closure is in the best interest of the students in the school district as a whole." Ark.Code Ann. § 6–20–602(2)(C)(ii). Thus, the Board is charged with making this determination and was given a standard for review for making such a determination. The statute further provides:

> (B) Any school board of directors seeking the state board approval to close isolated schools or parts thereof under subdivision (b)(2)(A) of this section shall:
>
> (i) No less than thirty (30) days prior to a regularly scheduled state board meeting, *request a hearing* on the matter before the state board and *file a petition* to have the motion reviewed and approved by the state board.

Ark.Code Ann. § 6–20–602(2)(B)(i) (emphasis added). Consequently, the determination is prompted by a school district's petition, which must contain statutorily required information,[4] ⌊₁₂⌋and the Board is permitted to approve or disapprove of the petition based on the set forth standard. After considering the procedure established by the General Assembly in section 6–20–602, we conclude that the Board acts in a judicial or quasi-judicial capacity, rather than a day-to-day administrative capacity, when it reviews a petition for closure of an isolated school.

---

4. Those requirements include:
 (ii) The petition shall:
 (*a*) Identify the specific isolated schools or part thereof that the local board of directors has moved to close;
 (*b*) State all reasons that the isolated schools or part thereof should be closed;
 (*c*) State how the closure will serve the best interests of the students in the district as a whole;
 (*d*) State if the closure will have any negative impact on desegregation efforts or violate any valid court order from a court of proper jurisdiction; and
 (*e*) Have attached a copy of the final motion approving the closure by the local board of directors.
Ark.Code Ann. § 6–20–602(2)(B)(ii).

In addition, the record reveals that both notice and a hearing were part of the Board's determination regarding the Fourche Valley campus. As required by the statute, a school district must request, no less than thirty days prior to a regularly scheduled meeting of the Board, a hearing, and file a petition. The District did so, and the record reflects that on April 1, 2009, the Department of Education notified the District that a hearing on its petition would be held on April 13, 2009, at 9:00 a.m. That hearing was held; thus, both notice and a hearing were had.[5] In addition, the Board is authorized by the statute to review and approve or disapprove of the petition, constituting a final disposition in any matter other than rule making in which the agency was required by law to make a determination. Accordingly, we hold that the Board's determination on the petition was a final disposition and constituted an adjudication for purposes of the APA, rendering the APA applicable. For these reasons, we affirm the circuit court's denial of the Board's motion to dismiss on this basis.

## II. Standing

For its final point on cross-appeal, the Board argues that the circuit court erred in failing to dismiss the Parents' petition for judicial review due to their lack of standing. The Board asserts that the Parents did not show that they had suffered an injury as a result of the Board's decision and, thus, they lacked standing. It avers that the Parents failed to allege a concrete, specific, real, and immediate injury required for standing under the APA. The Board maintains that the Parents cannot show that their constitutional rights have been violated by the closure because they have no constitutional right to attend the school or campus of their choice and that they cannot show that their transportation time is any more burdensome than that of any other students residing in rural Arkansas. For these reasons, the Board claims, the Parents lacked standing and their petition for judicial review should have been dismissed.

The Parents respond that all that was required of them to establish an injury under the APA was a showing that the agency's act had a prejudicial impact on them. They maintain that their claim of constitutional injury was sufficient to confer standing, but, further, the disruption in their children's education resulting from changing schools was also sufficient prejudicial impact. Accordingly, the Parents contend that the circuit court properly denied the Board's motion to dismiss on this basis.

The question of standing is a matter of law for this court to decide, and this court reviews questions of law de novo. See *Arkansas Beverage Retailers Ass'n, Inc. v. Moore*, 369 Ark. 498, 256 S.W.3d 488 (2007). In *Moore*, this court held that, for purposes of the APA,

so long as an individual considers his or her legal rights violated or considers himself or herself harmed or damaged, has been adversely affected or aggrieved by the agency action, has a personal stake in the outcome of the controversy, and can demonstrate a concrete, specific, real, and immediate injury by the agency's final action, that individual is entitled to judicial review of that agency action.

*Id.* at 505–06, 256 S.W.3d at 494.

Here, the Parents alleged in their petitions for judicial review that their

---

5. Contained within the record too were certain Board procedures for isolated-school closure that provided time for both the petitioning school district and any persons opposed to the closure to address the Board.

children had a fundamental right to an adequate educational opportunity, which would be denied if the Fourche Valley campus was closed, due to the increased transportation time they would suffer. They further claimed that the increased transportation time would have an undetermined negative impact on their academic achievements. In making these assertions, the Parents relied on this court's decision in *Lake View School District No. 25 v. Huckabee*, 351 Ark. 31, 91 S.W.3d 472 (2002). However, in *Lake View*, this court specifically found it "unnecessary to reach the issue of whether a fundamental right [to an adequate education was] also implied," instead holding that the clear language of Ark. Const. art. 14 imposed upon the State an absolute constitutional duty to provide an adequate education to its children. 351 Ark. at 71, 91 S.W.3d at 495. Notwithstanding the fact that we have not previously recognized a fundamental right to an adequate education, the State has an absolute constitutional duty to provide them with one, and we hold that the Parents' allegation that their children would suffer a negative impact on their academic achievement due to the Board's approval of the District's petition for closure was sufficient injury to confer standing under the APA as outlined in *Moore*. Accordingly, the circuit court did not abuse its discretion in denying the Board's motion to dismiss on the basis of standing. Having so decided, we turn to the Parents' direct appeal.

### III. Appeal of the Board's Decision

For their sole point on appeal, the Parents argue that the Board's approval of the District's petition for closure was in violation of their children's constitutional rights. They contend that transportation is a necessary component to the provision of an equal opportunity to an adequate education. The Parents aver that the Arkansas Constitution requires the State to define "excessive transportation" and to adequately fund the transportation needs of school districts. They claim that until the State so defines and funds, the Board should be enjoined from authorizing the District's petition for closure.

The Board responds, asserting initially that the Parents' argument is not preserved for appeal because they did not obtain a proper ruling on it before the circuit court. It urges that the circuit court did not issue a ruling as to whether excessive transportation time must be defined before approval of a petition for closure. The Board further states that the Parents have failed to demonstrate how their children will be denied an adequate education, as no constitutional provision requires the Board to define the term. It submits that whether the term is defined and whether appropriate funding for transportation is provided are well beyond the scope of the Board's authority and beyond this court's review under the APA; instead, it points out, a more appropriate venue to obtain such relief would be to file a declaratory-judgment action. With respect to the merits, the Board asserts that its decision was supported by substantial evidence and was in no way arbitrary or capricious.

The District responds, also arguing that the Parents failed to preserve their argument on appeal, as the circuit court did not specifically rule on the Parents' constitutional argument. It maintains that the circuit court's order should be affirmed because the Parents' claims are barred by res judicata, in that they were fully litigated and resolved in *Lake View, supra*. Alternatively, the District claims, substantial evidence supported the circuit court's affirmance of the Board's decision.

██ Our review of an appeal under the APA is directed, not toward the circuit court, but toward the decision of the agency, because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *See Ford Motor Co. v. Arkansas Motor Vehicle Comm'n*, 357 Ark. 125, 161 S.W.3d 788 (2004). Our review of administrative decisions is limited in scope. *See id.* When reviewing such decisions, we uphold them if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *See id.*

 In determining whether a decision is supported by substantial evidence, we review the record to ascertain if the decision is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *See id.* In doing so, we give the evidence its strongest probative force in favor of the administrative agency. *See id.* The question is not ⌊17⌋whether the testimony would have supported a contrary finding, but whether it supports the finding that was made. *See id.* As true for any other factfinder, it is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to accord the evidence. *See id.*

 As an initial matter, our review of the record reveals that the Parents' argument is preserved for appeal. In the hearing before the Board, the Parents' legal counsel argued that

it's the State's duty to define "an adequate education." As they said in the Lakeview case, an adequacy study is necessary and must be conducted forthwith. Excessive transportation time may deny the student a substantial equal [sic] opportunity to an adequate

education. The State must define "excessive transportation time" to comply with the mandate of Lakeview, and this Board should not approve the closure of an isolated school until "excessive transportation time" has been defined and this district can prove that closure will not result in "excessive transportation time."

Moreover, before the circuit court, the Parents clearly presented their constitutional claim, arguing that

We're making a claim essentially based on Article XIV, Section 1, Article II, Sections 2, 3, and 8 of the Arkansas Constitution as interpreted by the Arkansas Supreme Court in the Lake View decisions.

. . . .

The duty to determine adequacy is an affirmative duty. It requires action, and this means the State cannot stick its head in the sand after identifying a problem. It must assess and evaluate the problem and to take [sic] appropriate actions to ensure that no child in this State is denied his right to an adequate education.

In the context of the present case, the problem is the transportation of isolated school students. The State has recognized the problem. Recognized it in 2005 passing a statute requiring a study of the issue, but then it has failed to complete the study, and failed to take any action.

Our position is before you close an isolated school, you have to complete that study. You have to decide are isolated schools necessary to an adequate educational system in the State of Arkansas. And we submit that in order to make that determination, the State of Arkansas must determine whether an isolated school—well, in order to deter-

mine whether an isolated school is necessary to an adequate education system, the State must do two things, which is define excessive transportation time.... And, then second, address the issue of transportation variability....

. . . .

Until the General Assembly makes those determinations and answers those questions, any decision to close an isolated school is arbitrary, capricious, and a violation of the Arkansas Constitution.

And, finally, the circuit court, in its order, as set forth above, ruled that there was substantial evidence to support the Board's ruling and that the ruling was "not arbitrary or capricious or in violation of constitutional or statutory provisions." Because it is clear that the Parents raised their argument before the Board and circuit court and obtained a ruling, the Parents' argument is preserved for this court's review. We turn, then, to the merits of the Parents' claim.[6]

▆ As set forth above, this court has previously held that the State has an absolute duty under our state constitution to provide an adequate education to each school child, as well as an equal education to each school child. *See Lake View*, 351 Ark. at 71, 78–79, 91 S.W.3d at 495, 500. Instead of challenging the evidence before the Board, the Parents urge that the State has the obligation to render a definition of excessive transportation time and to provide adequate funding, and until it does so, the Board should be enjoined from rendering any decision under section 6–20–602. However, their claim that the State is failing in its obligation does not warrant re-

versal of the Board's decision in this appeal under the APA.

The State was not a defendant in this case, and it is the Board's action that is the sole action subject to review under the APA. While the Board is an agency of the State, it is not the State itself, and because this is an appeal under the APA, whether or not the State itself is in violation of its constitutional duty to provide an adequate education is simply not before us. Under the APA, the Parents' challenge is limited strictly to the final action of the agency, here, the Board's approval of the District's petition for closure. *See* Ark.Code Ann. § 25–15–212(a). Moreover, our review is strictly limited to determining whether the substantial rights of the Parents have been prejudiced because the Board's decision was:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the agency's statutory authority;

(3) Made upon unlawful procedure;

(4) Affected by other error or law;

(5) Not supported by substantial evidence of record; or

(6) Arbitrary, capricious, or characterized by abuse of discretion.

Ark.Code Ann. § 25–15–212(h).

▆ Here, the Parents have asked this court to enjoin the Board from acting on petitions for closure, claiming solely that any approval to close renders their children's education constitutionally inadequate due to the State's failures. But, as it currently stands, our educational system is constitutionally firm, *see Lake View School District No. 25 v. Huckabee*, 370

---

6. The District argues that the Parents' claims are barred by the doctrine of res judicata because "the issues surrounding the definition and determination of adequacy were fully litigated" in the *Lake View* litigation. Were

this court to so hold, it would preclude any future challenge ever made to the constitutionality of the state's educational system. There is simply no merit to this argument by the District.

Ark. 139, 257 S.W.3d 879 (2007), and the Board's decision itself was not in violation of any constitutional authority.[7]

■ [20]There is the point, too, that the Parents have failed to direct this court to any authority that the Board itself was required to define excessive transportation time.[8] State agencies [21]only possess such powers as are conferred by statute or nec-essarily implied from a statute. *See Brookshire v. Adcock,* 2009 Ark. 207, 307 S.W.3d 22. Pursuant to section 6–20–602, the Board is limited to only two consider-ations when making a decision to approve or disapprove a petition for closure. Spe-cifically, the statute authorizes the Board to make such a determination, *see* Ark. Code Ann. § 6–20–602(b)(2)(C)(i), and in

7. It is evident to this court that the General Assembly is aware of the issues involving pub-lic-school transportation, and we have every confidence that its resolution of any matters involving education, such as transportation concerns, will be direct and substantial.

8. In their statement of the case, the Parents cite to Ark.Code Ann. § 6–19–123(a) (Repl. 2007), which provides:

(a) The Bureau of Legislative Research in conjunction with the Division of Public School Academic Facilities and Transporta-tion shall conduct a study of the transporta-tion of public school students by public school districts in the state with an empha-sis on public school districts resulting from consolidation or annexation, isolated school districts, and public school districts with declining enrollment to assess whether the time and cost of public school district trans-portation for students enrolled in those public school districts can or should be minimized.

(b) The study shall include, without limi-tation, the following:

(1) How public school districts adminis-ter student transportation routes and num-ber of school buses to accommodate stu-dent needs;

(2) How regional or local geography in-fluences time and cost of school bus routes;

(3) How student characteristics and den-sity or scarcity of student population impact the time and cost of student transportation; and

(4) A review of other states' practices concerning student transportation.

(c) The bureau shall report its findings and recommendations to the House Interim Committee on Education and the Senate Interim Committee on Education before October 1, 2008.

(d) The report shall include, without limi-tation, the following:

(1) A description of the boundaries of all public school districts resulting from con-solidation or annexation;

(2) A list of public school districts for which a boundary adjustment or other al-ternative would reduce the public school district's transportation time or cost;

(3) A detailed description of each alterna-tive for reducing a public school district's transportation time or cost, including with-out limitation for each alternative:

(A) The number of hours of transporta-tion time saved per student presented by public school district and by statewide total; and

(B) The total cost saved under the alter-native presented by public school district and by statewide total; and

(4) A description of the proposed imple-mentation of any alternative, including without limitation:

(A) The cost of implementation; and

(B) For any boundary change considered in the alternative, the impact, if any, of the boundary change on an affected public school district's compliance with the

State Board of Education's standards for accreditation, academic achievement, and financial management.

Ark.Code Ann. § 6–19–123 (Repl.2007). However, the plain language of the statute requires this report to be prepared not by the Board of Education, but by the Bureau of Legislative Research, in conjunction with the Division of Public School Academic Facilities and Transportation. That Division operates under the direct supervision of the Commis-sion for Arkansas Public School Academic Facilities and Transportation, which shall consist of the Director of the Department of Finance and Administration, the Commission-er of Education, and the President of the Arkansas Development Finance Authority. *See* Ark.Code Ann. § 6–21–112 & § 6–21–114 (Supp.2009).

doing so, the Board shall only approve the petition if: (1) the closure is in the best interest of students in the school district as a whole; and (2) the closure will not have any negative impact on desegregation efforts or will not violate any valid court order from a court of proper jurisdiction. *See* Ark.Code Ann. § 6–20–602(b)(2)(C)(ii)–(iii). Our review of the record reveals that the Board's decision to approve the District's petition for closure did not violate a constitutional provision and complied with the Board's statutory authority. Because the Parents have not demonstrated that the Board's action in approving the petition for closure prejudiced their substantial rights under one of the bases of section 25–15–212(h), we affirm.

Affirmed.

CORBIN, J., not participating.